Good morning. May it please the Court, Eugene Scalia representing the appellants. I'd like to reserve two minutes for rebuttal. As participants in the USC plans, plaintiffs had the authority to sue under ERISA regarding their retirement benefits, and that authority included selecting the forum in which to conduct that litigation. Plaintiffs here agreed that the forum for all claims, including those arising under Federal law, would be arbitration. And accordingly, and under a long line of Supreme Court decisions, they are obligated to proceed in arbitration. That arbitration, moreover, is to be individual and on a non-class basis, because for, among other reasons, the parties here before this Court agree that they do not have an agreement to class arbitration, and therefore Stolt-Nielsen dictates that it be individual arbitration. How does that vindicate the class rights? It, it vindicates the rights that the plaintiffs have to the benefits in their retirement accounts. And the Supreme Court in LaRue explained that they have an ability to proceed to seek recovery as to their accounts. What this plan is, is a series of accounts involving monies that they contributed, investment options that they selected, and they have the full ability in arbitration to sue, to ensure that those accounts are properly funded, and to seek equitable relief regarding the plan. So, for example, the ability to sue and have a fiduciary replaced or the like. What they would never have is the ability to sue and seek money for other people without proceeding as a class action. So LaRue doesn't tell us that. LaRue tells us that an individual can seek relief if only their own account is affected. But it doesn't say, and they can't seek relief if the same thing they're challenging affects other people, too. Well, certainly LaRue doesn't preclude class actions. It simply doesn't require that they be available. But I'm confused why it has to be a class action. So say there's some kind of exorbitant fee that's being charged to all account holders. It's the same policy that's affecting everyone. Why can't an individual seek relief on behalf of the plan for that problem that cuts across accounts without it being a class action? It can sue to seek relief of an injunctive nature that affects who runs the plan, for example, who they retain as a record keeper, which is an issue here. But once you have suit being brought with respect to other people regarding their monetary interests, you're protections available under Rule 23 be available if a suit of that nature is going to be available. Again, they have the ability in arbitration to pursue everything that would be of interest to them with respect to the plan. But what they can't do is step over and implicate due process rights. And is that different in court? So, I mean, in court, could an individual seek relief for everyone in the plan that's being affected by the same policy, even if it requires monetary — a monetary remedy? Yes, but only with the Rule 23 protections or something substantially identical to them. No court has — You're saying it has to be a class action. You can't bring an ERISA claim like that without it being a class action? That's correct, Your Honor, because — But do we have a case from our court that says that? I don't believe there's a case addressing that specific issue. There certainly are other cases, including the Cone case from the Second Circuit, which gets right the fact that if you're seeking to vindicate other people's interests in the plan, you've got to have due process protections, Your Honor. What I would point the court to is decisions such as SACOB, which is a — which is a PAGA case. And there, this court recognized that it was okay to go forward in arbitration on an individual basis, even though there could be relief sought as to violations toward other people, because it was the government's claim being brought. And the court was at great pains to emphasize in SACOB that it was not other people's monetary claims that would be litigated in a PAGA case. It was only the government's penalty interest as to all those other people. Here, very different situation. And the reasoning of SACOB dictates the opposite conclusion, that you can't go into court or arbitration seeking relief as to thousands of people monetarily in those accounts that they put money into. They selected the investment options. You can't have an individual without the Rule 23 protections going in and litigating those interests. So whoever — however broad the remedy sought, the relief would be on behalf of the plan, right? The relief would be affecting the plan accounts. So you just get more funds put into your individual account. Technically, it's as to the plan, but for all practical purposes, it's highly individualized. Again, it concerns the money that you put in, the investment options that you selected, the money that you ultimately will receive. But there are many cases saying that it's on behalf of the plan, and including LaRue and others, it's on behalf of the plan. And at that point, I don't understand why it's different from what was dealt with in Welch, which was on behalf of the government, which required specific language in the arbitration agreement saying claims brought on behalf of someone else need to be covered in arbitration, too. Right. And, Your Honor, United States' XFL-RELCH, we think, is further strong evidence that an arbitration agreement can cover claims of the nature here. So say we agree with you about that, but why do we think this language did, given that Welch said you have to include and claims on behalf of others, and this agreement doesn't say that? Well, several reasons. First, the statutes themselves. Second, the relationships and the factual circumstances. As to the statutory provisions at issue, fundamentally different. As this Court emphasized in Landwehr, in an ERISA case, you don't proceed in the name of the plan. You don't even identify the plan. In Comer, this Court said the cause of action belongs to the plaintiff. In United States' XFL-RELCH, this Court said the claim belongs to the government. So the statutory framework is very different. Remember, in FCA ---- But in Stevens, the Supreme Court says that the QE-TAM actions are on behalf of the government and the plaintiff. I mean, the same thing exists in QE-TAM. And you actually have an assignment of the claim. Here, you're on behalf of the plan, LaRue says. In QE-TAM, you actually get part of the claim for yourself. Yeah. So, Your Honor, QE-TAM claim brought in the name of the government. The government has an absolute right to intervene and take over the case at the outset. It can elect to continue receiving pleadings. But if they do, the plaintiff gets to stay, too. They can't kick them out. I mean, the plaintiff has a claim at that point. But the government is always the named party. The government can take control of the And the government has approval authority ultimately over any settlement. Remember, by contrast, under ERISA, the plan can't even sue. And this Court specifically said ---- But you can't settle without the plan here either, right? The fiduciaries can approve it. But the plan never is the plaintiff. This Court emphasized that in LaRue. And again, it said in Comer the cause of action belongs to the plaintiffs. Well, it did say that, but it also emphasized that there were ---- it implied that there were non-derivative and derivative claims. And it ---- because it said there were non-derivative claims that, in fact, the plan arbitrate ---- the plan's arbitration agreement couldn't bind the individual plaintiff. It seems to me, though, that there are ---- if there are derivative claims, isn't the opposite true? But, Your Honor, respectfully, I don't believe they're derivative claims because Comer said that they are not derivative claims. They are claims not only brought on behalf of the plan, but entirely with respect to an individual interest that's wholly absent in the context of a ketan claim. Remember the factual circumstance. That's the second important point of distinction with United States ex rel welch, which is there you had a fraud dispute between a company and the United States government. And the question was whether an arbitration agreement entered an employment relation ---- relationship which had the word employment in about every single sentence could be construed to cover that fraud claim brought for the government. And this Court said no. By contrast, what you have here is an employment relationship. And people litigating about one of the principal things that people litigate about in an employment relationship, which is benefits. What do you litigate about? You litigate about terminations. You litigate about terms and conditions. You litigate about wages. And you litigate about benefits. But welch doesn't really say this contract was only about employment and this fraud claim isn't about employment. It says that the language doesn't say anything about claims on behalf of someone else. And this ---- I mean, we have ---- there are just a lot of cases saying that ERISA claims are on behalf of the plan. Well, but again, Your Honor, this Court has also said very, very directly, the model that was followed in Comer was to say the plaintiffs here, the claims belong to them, they're bringing this case, let's look and see if they have an arbitration agreement. And here you have that exact circumstance met. It's the ---- it's the factual scenario that was absent in Comer. But welch says that, too, right? I mean, welch says if they had included that language, the plan couldn't stop them. They'd be bound. So it seems very analogous. Your Honor, welch does have a footnote saying, well, you could have had language like this. That certainly is not a binding precedent that the only circumstance under which you can have, you know, particularly an ERISA claim, which is so different than a QI-TAM claim subject to an arbitration agreement, is if you have the language that happened to have mentioned in the footnote in United States ex rel welch. What you do have here is arbitration agreements that talk about all claims, talk about Federal claims, that in several different places say that any or all claims will be litigated, and that includes sentences that have no reference at all to claims that, you know, may have belonged to the plaintiff itself. But that was true in welch, too, right? The contract in welch also had this thing about disputes between the employee and the employer, and then went on to have this very broad language, and they said the broad language is interpreted in the context of the former, which it's the same structure as this language. Respectfully, no. Judge Feeney. Could the plaintiffs here settle with your client? Would that be binding on the plan? Our view is that the individual plaintiffs could. But that's the question of whether this is — whose claim this is, really, under Ninth Circuit precedent, isn't this the claim of the plan? I mean, isn't that the applicable — that's where the — any award is going to go, is it not, to the plan? It goes technically — Well, who's claim is this? Technically, what this Court has said is the cause of action belongs to the plaintiffs. That was this Court's language in the Comer case talking about this exact question, whether it enforced an arbitration agreement. I'm sorry, Judge. No, I'm sorry to interrupt you. The problem I have with Comer, and maybe you can help me out with this, is that what the language says is this doesn't help Smith Barney because our own precedents hold that an ERISA claimant also, and it's in italics, sues in a nonderivative capacity. So that suggests to me that the plaintiffs are suing both in a derivative capacity, meaning that the claims are brought on behalf of the plan, and a nonderivative capacity so far as their individual claims are concerned. Your Honor — So if that's true — you may think that's not true, but if that's true, then the plaintiffs can't be compelled to arbitrate the purely derivative claims, right? First of all, I think what's being said there is also, as in — just like the EEOC. I don't have that passage in front of me, but I think they're saying the EEOC doesn't sue in a derivative capacity, nor does the plaintiff. But if I could talk about the presumption for arbitrability. We believe these agreements — again, these are employment agreements. We're talking about an employment claim. We're talking about one of the principal claims that you might have in an employment relationship. Totally different than the arbitration of the government's fraud claim. But more than that, there is, at the end of the day, if it's not clear, a presumption to resolve ambiguities for arbitration. The plaintiffs themselves never suggested that the language itself didn't capture the claims they might bring in the plan. They made a statutory argument, and they said that claims for employee benefits weren't employment claims. But they never even cited Welch. They never suggested that they had a Welch-type circumstance. This Court has repeatedly referred to 401K or 502A2, sorry for all the section claims, as plaintiff's claims, their claims, his claims. If you look at Tibble, if you look at — if you look at Bowles, if you look at Comer, in all of those cases, it was referred to as the plaintiff's claims. You can't fault the parties for using a similar concept, that a claim brought on behalf of the plan, but which affects your own personal account, is your claim. If it's not clear, at best — at worst, it's ambiguous, and that ambiguity means that these are claims that ought to be arbitrated. The statute is not ambiguous. 29 U.S.C. 1109, Liability for Breach of Fiduciary Duty, talks about claims being brought on behalf of the plan, doesn't it? Uses the word plan several times to suggest that the claim is one belonging to the plan as opposed to individual. And we don't dispute that as a technical matter, Your Honor, it's brought on behalf of the plan. My point is that when these parties agreed to arbitrate disputes arising from their relationship, benefit claims would have been front and center at that. And given this own court's reference to benefits claims as the plaintiff's claims, it's certainly appropriate to construe their contract to cover them as well. Let's assume for the sake of argument, we'll give you some time for rebuttal, that the sole claim here was to remove the fiduciary. Do you think that could be arbitrated? I do, Your Honor. That is injunctive relief that could be sought. And the agreements themselves recognize that relief that would be available in court is available in arbitration. That's a remedy that's available under Section 409. Even though it affects the other participants in the plan? That's a scenario, Your Honor, that you have under any number of statutes. You could have a wage-hour suit, antitrust suit, sinking, among other things, injunctive relief. That's going to affect other people. What it doesn't do is implicate their due process rights to money, to their accounts in the way that having suit brought as to all the other individuals' accounts could operate. Thank you, Your Honor. Good morning, Your Honors. Michael Wolff for the Plaintiffs' Appellees, and may it please the Court. The decision in Welch does directly apply, because the Court pointed out in Welch that when the arbitration is — agreement is limited to the claims that the employee has against the employer, then that's limited to an individual claim and not a derivative claim, a claim on behalf of other affected people under PAGA or, by analogy, other participants in this plan. And there are over 28,000 participants in this plan. The arbitration in this agreement states that specifically, under that second arbitration provision that was addressed in Welch, similarly, that it only applies to claims that employee may have against the university. By its terms, under this Court's decision in Welch, that does not apply to the plan's claims that it has against the fiduciaries of this plan, which includes the university, but it also includes other individuals who happen to be university employees. Now, there is no question but that claims under Section 1132A2 are actions on behalf of the plan, and that's because 1132A2 actions are brought to enforce the provisions of Section 1109A. And what 1109A says is that the fiduciaries who are in breach shall make good to the plan all losses resulting from the fiduciaries' breach of duties and shall restore to the plan all profits the fiduciaries have made from the use of plan assets. Section 1104 that establishes the fiduciary duty states that the fiduciary shall discharge their duties to the plan solely in the interest of the participants and for the exclusive purposes of providing benefits, discharging reasonable expenses of administration, and acting prudently. So under that understanding of what's happening, I don't really understand why this has to be a class action. It seems like you actually are kind of in agreement with them on that, and you brought this as a class action, but your theory seems to be that an individual can sue on behalf of the plan for everyone. So why do you need it to be a class action? That is — that's a theory that we have pursued, Your Honor, futilely for the past 10 years. No court has accepted that theory, and the reason stemmed from the Second Circuit's decision in Cohn v. Kaufman, C-O-A-N. The reason is that if you have multiple — you can have multiple adjudications by thousands of different participants over the exact same fiduciary conduct and the exact same damages to the plan, and yet each of those different adjudications either establish inconsistent results, subject the fiduciaries to incompatible standards of conduct, or an early-filing participant could get a decision against her on those same claims, and that could arguably have res judicata effect on the other participants who haven't gotten to judgment in time, or under Rule 23b-1, it could have the practical effect of affecting those subsequent participants' rights. And, Your Honor, can you imagine a situation where somebody goes in at the behest of the fiduciaries to file an illegitimate suit, to lose the suit and have the fiduciaries cleared of any liability, now no other participant can bring an action under either res judicata or the practical effect of that? Because of that effect, the Court in the Second Circuit said, and this has been followed by just about every other court that's considered class certification issues, has said that due process — due process protections have to be established to protect the interests of the other participants, so that when the Court decides who are the fiduciaries of this plan, have the fiduciaries breached their duties in these various respects claimed, has the plan suffered losses, what is the measure by which we are going to determine plan losses, which then determines how much goes into each individual's account, the Court is doing that for all of the participants and enacts the Rule 23 procedural safeguards and it's a non-opt-out class under Rule 23b-1 to protect the interests of the participants. So that's the key to have actions be class actions, too, because other relators might be affected? I'm just having trouble because we want the analogy in one way, but not the other. Right. Well, recall the interest of the other potential qui tam plaintiffs is that they're not going to get a cut of the government's recovery of its damages. So they are getting paid attorney fees, in a way, for prosecuting the action. That's different from an ERISA plan, where if the plan has been paying excessive recordkeeping fees and the Court says, all right, the proper recordkeeping fee would have been $20, and so the excess is what you have to pay in and you have to allocate among that all of the participants' accounts pro rata over the time that those damages accrued. That's a much different circumstance, you see, because now each of those plaintiffs are getting into their retirement accounts a pro rata amount of those damages. So some plaintiffs are going to be happy with 20. Another plaintiff might have proved that the reasonable fee was $18. Another plaintiff might have proved that a reasonable fee was $10. Another plaintiff might have lost the case entirely and have a court say that, oh, no, well, the arrangement was reasonable. So in litigation, at least, on behalf of the plan, we have due process safeguards erected to protect those participants' interests, and that's Rule 23, which — and nearly universally, there's maybe one or two exceptions, every court has certified these cases under Rule 23b-1, because these are paradigmatic Rule 23b-1 class actions. That's the Third Circuit found in Shering. What you don't have is anything like that in arbitration. And that's why arbitration is completely unsuitable for effective vindication of the plan's rights to recover its damages under Section 1109A. As counsel repeatedly states, and USC has been adamant about this position, there is no class arbitration. There is no way, no how, any one of these 28,000 participants in this plan are going to be able to bring an action that recovers all of the plan's losses in a way that protects all of their interests. So what counsel — I just don't understand still, I guess, whether you could have sought the same remedies with a single plaintiff. Yes. Well, with a single participant — In court. Yes. Like, say, in court, can you get the same relief that you're seeking with a single plaintiff? Yes, potentially. And here's how, because, again, in these actions, here's what you have to prove. These are the individuals who are the fiduciaries as to these acts. These acts, say, having five record keepers in a plan, not putting the plan's recordkeeping out for competitive bidding, is a breach, and they committed the breach. The plan suffered losses because had they put it out to bid, a reasonable amount of recordkeeping fees would have been $10 per participant less over the period of time, and now that's how I measure the damages. So why can't you make those arguments that you could make in court with one plaintiff, why can't you just make them in arbitration? I mean, putting — I know we have the whole thing about whether you agreed to arbitration, but saying you did, I'm not sure I understand why, if you can do that in court, you can't do it in arbitration with a single plaintiff, get relief that's plan-wide. Well, potentially you could, but one question is, are you going to get the discovery necessary to get all of that information? Because all of this stuff is conducted behind closed doors. How the fiduciary's acted isn't open. Are we going to get all of the plan information? It's a participant who may have a pro rata share in a retirement account that results in $1,000 going to spend $500,000 in attorney's and expert fees to go through the process of proving all of that for a $28,000, $4 billion — $28,000-participant $4 billion plan to get her specific $1,000 allocation. Here's another question. Let's assume that that participant does do that, expends the huge amount of money it takes to prove these cases, and I've done a bunch of them, and gets the decision. I mean, is there a different rule for fees, if it's a class action or not, in this context, if you get that kind of award on behalf of the whole plan? Now, there's fee shifting, but is an arbitrator going to award $600,000 in attorney fees when the participant's recovered only $1,000? Problem number two, though, all right? Let's assume that participant has proved all of that, all right? Is your USC and the other fiduciaries of this plan bound by that arbitrator's decision? Or do they now get to take a shot on participant number two and say, well, let's see if we can win this arbitration? Arbitration isn't subject to arcane concepts such as res judicata, which courts are bound by. So who knows what the next arbitrator is going to do? And so does now USC get to go through 1,000 through 28,000 participants and just hope that it keeps, that it revises its strategy on the next arbitration? Maybe it gets a better arbitrator. With some of these agreements, we're going to be in AAA arbitration. With some, we'll be in JAMS arbitration. Maybe we can play those off and get good results in some cases, good results in others. And then maybe they can lower the amount of their damages by only going at this by one participant at a time in the hope, one, 28,000 participants aren't going to go through all of that process, or two, we can win with some of the arbitrators and now get inconsistent decisions, or three, get arbitrators to agree, oh, well, it's an individual claim, so, yes, I find the plan has suffered $30 million in losses from this fiduciary breach, but I'm only awarding you, participant, $1,000 and not But don't you just need one arbitrator? I mean, you could flip the argument. They, I mean, you just need one plaintiff to convince one arbitrator that it's plan-wide relief in order to relieve for the whole plan, and then you're ahead. I, I, I, Well, but there's no certainty that the arbitrator's going to do that. And USC will argue, as they've argued here, and they've argued in the court below, that all you get is $1,000. You don't, they say, you don't get to recover the $30 million for the plan. They say the, they will say in arbitration they're saying it now. The arbitrator cannot award that. You only get $1,000, and that's But it seems like you, as a plaintiff's lawyer for the plaintiff who wants to get relief for the plan, should argue they're wrong. I, yes, I should argue they're wrong, but what is the certainty that that's going to happen? Let me ask you a different question. How do you view these claims? Are they purely derivative, purely non-derivative, or a mixture? I would say it's a mixture, Your Honor, and it really depends upon the nature of the breach and the nature of the fiduciary duty. So in LaRue, Mr. LaRue provided the fiduciary an instruction to transfer his investment from one option to another. The fiduciary didn't do that, and he suffered a loss. So. Roberts, and non-derivative, it's a specific participant, fiduciary action, and participant-specific breach. In this case, the fiduciary actions, how many record keepers, what investment options in the plan, having 300 investment options in the plan, are actions that are taken as to the entire plan, 28,000 participants, and then implicates a larger amount of losses that have to be restored to the plan under Section 1109. And it's a calculation of losses, and it's not just picking up the totals in each individual participant's account. It's the exact opposite of that. It's determining, all right, if the plan had one record keeper instead at $20 per participant, it would have paid $30 million less in record-keeping fees, or if it had gone to this slate of 20 prudent investment options, it would have had $100 million more in assets for the participants' accounts. And then once that's determined, that large amount, the plan-wide amount, then determine, all right, what's the pro-rat allocation among all of the participants who were in the plan at the time. So in that sort of action, it is a derivative action. So what do you make of Comer? Of? Of Comer. Well, Comer is — I mean, it's a somewhat difficult case. I mean, I think its rejection of the unsuitability of arbitration for risk of fiduciary breach actions in light of Supreme Court precedent is incorrect, as we point out in the brief. But the point of the individual being able to pursue the claim on behalf of the plan, I think it's correct in saying that it does — that's something that the participant would have to agree to. So when you have a situation where the fiduciary has entered into an agreement with an investment advisor, like Smith, Barney, or Merrill Lynch, whoever, and those are always arbitration provisions because the SEC has approved that and regulates that, does that mean the participant can't sue for a breach of fiduciary duty by that advisor just because the plan has that? I think it has to be both, although I do want to point out, we do not concede that a plan document that provides for mandatory arbitration of all fiduciary breach actions is lawful or enforceable, because fiduciaries who agree to that, are they acting solely in the interest of the participants, or are they acting to protect themselves? And if they're acting to protect themselves by putting that arbitration provision in the plan document, they're violating Section 1106 by engaging in self-dealing. So I think it's problematic on that point. The core point of Comer, though, is that if a participant is going to release claims to arbitration, the participant has to do it. That's just one point. But the other points are, did the ---- But it implies that the participant could agree to arbitrate. I think what Comer says is that both the plan and the participant would have to agree to that. So in this context, you say that both the plan and the participants would have to consent to arbitration? Under the doctrine of Comer, but that's what the proviso I've provided about whether the plan provision is enforceable, because Section 1104a1d states that fiduciaries have to follow the terms of the plan only if they're consistent with ERISA. Now, backing up from that, though, what is the party's intent? Did the party's intent for these arbitration agreements to bar participant-led class actions to recover the plan's losses? They say it's only the claims that the employee may have, and under Welch, that means it doesn't include representative claims. USC did not put this provision in its plan document to bind the plan as in Comer. That indicates an intent on USC's part that these arbitration agreements don't apply to 1109 actions on behalf of the plan to recover the plan's losses. So both of those elements, from both the employee's perspective and the employer's to cover plan claims, only individual claims that the individual has against the university. What's your estimate of aggregate damages? My estimate of? Aggregate damages. What are you seeking as a general, in terms of damages in recovery? Well, the damage, we haven't specified the amount of the damages that we see, Your Honor, but it can exceed $100 million. Just when I get to the ballpark. In Tibble v. Edison, which is the case this court on Bonk decided in 2017, when it was finally remanded bound to the district court, that resulted in about $15 million in recovery. Okay. Thank you. Thank you. I'll give you three minutes. Thank you, Your Honor. Thank you. One of the most important things that an employee has is the interest he or she holds in his or her retirement account. That's one of the most important things to them, and it's something they believe they have. There are two things that I'd like to emphasize in closing this morning. First, it's one thing in the context of a fraud action brought in the name of the federal government against a company to, as plaintiffs would have you, carefully scrutinize an employment arbitration agreement to see if the government's claim is covered. It's quite different when we're talking about retirement accounts that people have with potentially life's savings that they depend upon to suppose, as plaintiffs would have you, that you don't have that, that you don't have an interest in it. And so we think these agreements are clear, but if there's any ambiguity, surely that ambiguity counts in favor of recognizing that you have the account and you have the claim, as this Court itself has said, and it's perfectly rational and appropriate to read these agreements the same way. For example, these agreements say, any claim that otherwise would have been decidable in a court of law, whether under local, state, or federal law, will instead be decided by arbitration, except as specifically excluded. That is a very broad agreement. And to do, as plaintiffs would have you, seize on a technicality as to whether you have it or you don't, or the plan has it, when we're talking about your own retirement saving, would really be an extraordinarily hostile approach toward arbitration, which they're advocating. Second, the procedural point, Judge Frieden, which you've raised, but they disagree with you. They have made a very compelling case as to why there are due process rights that simply don't permit trying to litigate other people's retirement benefits, other people's accounts, without the protectants of the class device, which aren't available here because of their own agreements, and Stolt-Nielsen. I would point out, finally, that as you listen toward the tail end of plaintiff's argument, you saw it collapse into the problems they've had in this case all along, which ultimately is they're trying to argue that ERISA claims can't be arbitrated. But that's just wrong. That's where their logic leads you. That's where you can't go, because it would create a massive circuit split. This Court long ago recognized that ERISA claims can be arbitrated, and these agreements are properly construed to cover those claims, what this Court in other contexts has called their claims, his claims, concerning their own retirement benefits. And for those reasons, we would ask that the Court reverse the decision below, remand, and remand with instructions, as plaintiffs concur, that if there's to be arbitration, it can't be on a class basis, because nobody agreed to that. Thank you, Counsel. Thank you. The case just argued will be submitted for decision. We will be in recess, and the students may stay here. Our law clerks will address you for a few minutes, and then we'll come back after conference.
judges: Thomas, Friedland, Zilly